208 So.2d 801

**Cecil PERDUE**

v.

**STATE.**

6 Div. 381.

Court of Appeals of Alabama.
March 19, 1968.

Cecil Perdue, pro se.

MacDonald Gallion, Atty. Gen., for the State.

CATES, Judge.

Appeal from denial of habeas corpus for bail.

Perdue was indicted for the capital offense of robbery. He alleged in his habeas corpus petition that the State's evidence was not enough to justify electrocution.

Petitioner's evidence sought to show alibi. The State adduced an eyewitness to the robbery of a filling station. This man said that two men, one of whom he identified as Perdue, perpetrated the crime.

This State's witness testified that Perdue's alleged accomplice backed up his menaces with a sawed-off shotgun. On cross it was brought out that no one was injured.

In robbery the larceny can come from actual violence or threats (vi et armis aut per minas). Undoubtedly, to some extent, the Legislature intended the death penalty for robbery to deter violence.

The threshold issue on this habeas corpus was under § 16 of the Constitution of 1901, i. e., whether or not the State's proof was "evident or the presumption great."

In murder, proof of the use of a deadly weapon permits an inference of malice aforethought. Here the deadly weapon was not fired.

After indictment there is an increment to burden assumed by the petitioner who seeks bail. Though he is presumed innocent, yet, in applying for bail, he must

combat the likelihood of flight to avoid trial. Beddow v. State, 259 Ala. 651, 68 So. 2d 503.

In the following recent cases, we denied review to the refusal of bail. Yet, in each case, the jury either acquitted or found a lesser degree: Livingston v. State, 40 Ala. App. 376, 116 So.2d 396; Ex parte McPhearson, 40 Ala.App. 168, 109 So.2d 755; and Wilbanks v. State, 40 Ala.App. 682, 122 So.2d 559.

■ We have carefully considered en banc the evidence and conclude that under the Colvin rule, i. e., bail must be allowed in capital cases "unless the evidence is clear and strong and would lead to a well guarded and dispassionate judgment reasonably compelling the conclusion that the offense has been committed, that the accused is the guilty agent, and that he would probably be punished capitally if the law is administered," the appellant is entitled to bail. Colvin v. State, 36 Ala.App. 104, 53 So.2d 99.

The judgment and decree of the circuit court denying appellant bail is reversed, and it is hereby ordered that the appellant be released upon his furnishing bail in the amount of $10,000.00 to be approved by the Circuit Judge below, or by the Sheriff of Jefferson County in compliance with Section 194, Title 15, Code of Alabama 1940.

Reversed and remanded with directions.

PRICE, P. J., concurs in result.

JOHNSON, Judge (dissenting).

Briefly, the State's evidence in this heinous crime is as follows: The petitioner and another individual together entered the service station where one of the victims was employed; petitioner's accomplice pulled a sawed-off shotgun which was concealed beneath his coat and demanded, "Give us your money or I'll blow your head off;" whereupon petitioner searched their persons for and took money from the victims who were at the time covered by the gun.

The majority opinion says in part as follows: "In murder, proof of the use of a deadly weapon permits an inference of malice aforethought. Here, the deadly weapon was not fired."

The majority opinion also contains a brief reference to the purpose of the passage of the death penalty for robbery in the State of Alabama. This opinion intimates strongly that the decision as to whether bail should be granted in a robbery case is somewhat dependent upon whether a victim suffered bodily harm or death during the commission of the crime and/or an attempt was made to inflict injury by the firing of a deadly weapon by the assailant or his accomplice.

The majority opinion further states in part that the Legislature intended that the death penalty would deter violence, which is understandably correct. Also the Legislature must have considered that the placing of a victim's life in "the jaws of death" by robbing him at the point of a sawed-off shotgun, a weapon effective when used at close range in criminal operations when certain and immediate death is desired, would be so atrocious as to warrant the death sentence on conviction.

It is the judgment of this writer that a robber is also a veritable potential killer and that it was never for one instant the intention of our forefathers, men of wisdom, who composed the Legislature which enacted and prescribed the punishment for the high crime of robbery, that an individual who committed this dastardly crime of horror should be granted bail, or the right thereto, simply because of the fact that a weapon of death drawn by the robber upon a victim was not fired.

The fact that no shot was fired nor injury sustained by the victims is due to the fact that neither of the victims offered resistance and such degree of violence was not necessary. Had such resistance been offered, these robbers would, no doubt, have instantaneously become murderers in the first degree and subjects for the electric chair.

The majority opinion cites three cases which occurred several years ago in this State wherein this court denied review to the refusal of the lower court to grant bail, subsequent to which the trial jury in each case "either acquitted or found a lesser degree." The test as to whether or not bail is to be granted in a given case should be bottomed on *the facts of that particular case.* To assume that the instant case stands as an exact parallel to the cases cited is unrealistic. The fact that juries, consisting of *twelve minds,* all of which must be satisfied of guilt in a fixed degree beyond a reasonable doubt, in the trial of these previous cases referred to in the majority opinion did not reach the same conclusion as did this court, should absolutely have no bearing on the decision of the case now before us.

The reasoning in the majority opinion is seemingly analogous to that of a doctor who in attending his patients applies the most highly recommended and generally effective treatment available, but, because of failure to cure on rare occasions, completely abandons the use of that treatment.

I do not here charge that my colleagues, after consideration of the evidence, in any manner intended to relax the legal restraints placed upon the granting of bail to one accused of a capital offense; yet, it is apparent to me from a study of the majority opinion that its legal application would be a source of solace and a salutatory directive to the potential criminal, who stands on the threshold of criminal indecision pondering in his mind whether or not to go hence and rob or murder.

The modern criminal is becoming highly professional and more and more employs scientific techniques in the pursuit of his nefarious deeds, yet the combatant forces who seek to deter and suppress his actions, to-wit, the law enforcement agencies and the courts of our great democracy, are seemingly not effectively standing abreast of or coping therewith. Due, no doubt, to the march of science and recent modified and relaxed legal rules and proceedings

adopted by the highest judicial authorities who govern and control our criminal jurisprudence, this was brought about.

In this crucial age of death and destruction when from year to year crime runs progressively rampant across our land, it is incumbent upon the courts of this nation to adhere strictly to the prevailing principles and precedents in the law with reference to bail. In my opinion, bail should not be granted in the horrible case before us. To do so and thereby grant this felon his right to liberty pending trial, would operate as a boon to and give criminal incentive to the potential criminal.

The question has often been asked by criminologists, "Are we of America, without a full realization thereof, coddling the criminal or annointing him with pink tea?"

How significant it is that as this minority opinion is being written, I should be confronted with staggering statistics this day released by the Federal Bureau of Investigation as to the alarming increase in the rate of crime across the nation in both urban and rural areas. These statistics are as follows: "Violent crimes rose 15% with murder up 12%, aggravated assault 8%, forcible rape 9% and robbery 27%."

I quote from Holmes v. State, 39 Ala. App. 422, 102 So.2d 673, in which this court states in part as follows:

"Where one is imprisoned by virtue of an indictment he is presumed to be guilty in the highest degree, and to be entitled to bail as of right, must overcome this presumption by proof. Rogers v. State, 30 Ala.App. 226, 4 So.2d 266; Deaver v. State, 24 Ala.App. 377, 135 So. 604."

I have carefully read the whole of the evidence in this proceeding and find nothing therein which would violate or transgress the presumptions or rules created by law regarding the granting of bail. A learned and distinguished circuit judge of Jefferson County, Alabama, with judicial experience of many years, heard the evidence and con-

**356**

sidered the same under the prevailing rules, to-wit, whether or not the "State's proof was evident or the presumption great" and would a trial jury after hearing the evidence probably set as punishment for the petitioner a death sentence.

It is beyond the power of mortals to accurately foretell the exact product of reasoning, to-wit, the verdict, of twelve men who compose a trial jury. Yet, after a careful ponderance of the evidence before me and the long existing rules of law governing the question before me, I hereby most respectfully dissent from the majority opinion.